## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SASHENE WRIGHT,

        *Plaintiff,*

  vs.

MIDWAY LOGISTICS LLC and ALI FAIZ
ALWIDYAN a/k/a DANNY ALWIDYAN,

        *Defendants.*

Case No. 22-cv-01079-EFM

## MEMORANDUM AND ORDER

Before the Court is Defendant Midway Logistics and Ali Faiz Alwidyan's Motion to Dismiss Plaintiff Sashene Wright's First Amended Complaint.[1]  Plaintiff Sashene Wright brought this lawsuit seeking redress for alleged violations of the Fair Labor Standards Act ("FLSA") and the Kansas Wage Payment Act ("KWPA") related to her employment at Midway.  She also alleges that an invasion of her privacy, actionable under both Kansas common law and the Kansas Wayne Owen Act, took place after the end of her employment.  For the reasons laid out below, the Court concludes that Plaintiff's invasion of privacy claims must be dismissed, while her claims under

---

[1] For ease of reference, and because this is now the operative complaint, the Court simply refers to this as the "Complaint."

the FLSA and KWPA may go forward.  Accordingly, the Court grants in part and denies in part Defendants' Motion (Doc. 15).

<h2 style="text-align:center">I.     Factual and Procedural Background[2]</h2>

Midway Logistics LLC is a freight brokerage company that connects shippers and transportation companies to transport freight in interstate commerce.  Through its brokerage business, Midway earns a percentage of each transaction.  At all times relevant to this lawsuit, Alwidyan has been the controlling member of Midway.

Plaintiff was hired by Midway in March 2020.  She was originally hired to work as a dispatcher, but one month later became a broker.  Several months after that, she was promoted to the position of general manager.  In May 2021, Plaintiff became a general sales manager.

Throughout her employment at Midway, Plaintiff alleges she regularly worked more than 40 hours per week.  As a dispatcher and broker, she worked 5 to 6 days per week for 11 or 12 hours each day.  Plaintiff's promotion to general manager required her to continue working 11- or 12-hour days and would sometimes require work on evenings and weekends.  Plaintiff alleges that Alwidyan knew she worked overtime, both because he knew the hours she worked and he "knew that employees like Wright had to conduct business on nights and weekends due to the nature of the business."

Plaintiff reports that she was never paid overtime compensation.  She attributes this to Defendants' misclassification of her as an independent contractor and their failure to comply with obligations to maintain records of the hours worked of non-exempt employees.

---

[2] The following facts, taken from Plaintiff's Complaint, are assumed true for the purpose of ruling on Defendants' Motion to Dismiss under Rule 12(b)(6).

After Plaintiff's first month of employment, she was paid 35% of the profit derived from each of her sales.  This payment was subject to certain reductions, including a 4% "factoring fee."  This fee was justified by Defendants as necessary to reimburse factoring companies.  According to Plaintiff, however, Defendants never had to reimburse factoring companies for most sales.  Plaintiff also states that certain unjustified chargebacks, truckstop software fees, and assistant fees diminished her compensation.

Plaintiff's employment with Midway ended in July 2021.  She alleges Midway refused to pay her for work performed in July 2021.  Further, after she left, Defendants used Plaintiff's company email address, which contained her name, to send emails to customers.  This was allegedly done to financially benefit Midway by "trick[ing]" customers into continuing to do business with Midway after Plaintiff left.

Plaintiff also alleges that, after she left Midway, her "images" were used in internet marketing materials without her permission.  Again, this was allegedly done to trick customers into continuing to do business with Midway.  Plaintiff represents that she has suffered stress, humiliation, and mental anguish as a result.

Plaintiff filed this lawsuit on March 27, 2022.  She amended her complaint approximately four months later.  Defendants now move to dismiss the First Amended Complaint in its entirety.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible

---

[3] Fed. R. Civ. P. 12(b)(6).

on its face.' "[4]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[6]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8]

### III.   Analysis

#### A.   Unpaid Wages for July 2021

Defendants' first argument is a complete nonstarter.  They contend that Plaintiff failed to allege in her Complaint that she performed any work in July 2021.  Because "wages," as defined by the KWPA, are "compensation for labor or services rendered by an employee,"[9] and Plaintiff has, according to Defendants, not alleged she worked in July 2021, her claim for wages during that time must be dismissed.  Defendants also cite the FLSA in support of this proposition.[10]

The barest glance at Plaintiff's Complaint belies Defendants' assertion.  In a paragraph Defendants themselves cite, Plaintiff alleges that "Midway failed and refused to pay Wright for

---

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Iqbal*, 556 U.S. at 678.

[8] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[9] K.S.A. § 44-313(c).

[10] *See* 29 U.S.C. §§ 206, 207 (requiring that nonexempt employees be paid for all hours worked in a workweek.)

*work performed in July 2021*."[11]  It is hard to imagine how Plaintiff could have phrased this more clearly.  Defendants appear to take issue with Plaintiff's failure to allege the type of work she performed after May 2021—she affirmatively alleged her positions by name for March 2020 through May 2021 but did not do so thereafter.  But this is immaterial.  Plaintiff properly alleged that she rendered "labor or services" during July 2021.[12]  Her claim for unpaid wages for July 2021 under the KWPA and FLSA will not be dismissed.

**B.      FLSA Overtime**

Defendants have three arguments as to why Plaintiff's claims under the FLSA should be dismissed.  First, Defendants contend Plaintiff has not alleged that she is a nonexempt employee under the FLSA.  Second, they argue that Plaintiff has not alleged she worked over 40 hours in any given workweek.   Third, Defendants argue that they had no actual or constructive knowledge of Plaintiff's alleged overtime.

*1.      Nonexempt Employee*

Certain categories of employees are exempt from the maximum hour, or overtime, requirements of the FLSA.[13]  Such exemptions operate as affirmative defenses.[14]  "A plaintiff need not anticipate in the complaint an affirmative defense that may be raised by the defendant; it is the defendant's burden to plead an affirmative defense."[15]  Plaintiff, therefore, was not required to

---

[11] Emphasis added.

[12] K.S.A. § 44-313(c).

[13] *See* 29 U.S.C. § 213.

[14] *See Scalia v. Paragon Contractors Corp.*, 957 F.3d 1156, 1165 (10th Cir. 2020) ("Statutory exemptions from the FLSA are affirmative defenses and the employer bears the burden of establishing entitlement."); *Charbonneau v. Mortg. Lenders of Am. L.L.C.*, 487 F. Supp. 3d 1081, 1085–86 (D. Kan. 2020) ("Defendants assert, as affirmative defenses, that the Team Leads were exempt from the FLSA's overtime requirements under the executive, administrative, highly compensated, and/or combination exemptions.").

[15] *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

plead the absence of Defendant's affirmative defense—*i.e.*, that Plaintiff is not an exempt employee.

Based on this clear Tenth Circuit precedent, Defendants' citations to a number of unpublished district court cases are unavailing.[16]   None of these cases stated that Plaintiff was *required* to plead status as a nonexempt employee, and to the extent that there are cases that require as much,[17] the Court believes that requirement to be in error.  A plaintiff is generally not required to plead the absence of an affirmative defense, and therefore Plaintiff here need not have pleaded that the affirmative defense of exemption under the FLSA did not apply to her situation.

> 2.     *Alleged Overtime*

Defendants' next argument depends in large part on a semantic distinction.  In essence, Defendants contend that while Plaintiff alleged she worked in excess of 40 hours per week, she did not allege she worked in excess of 40 hours per *workweek*.

The FLSA prohibits an employer from employing his employees "for a workweek longer than forty hours" unless the employee "receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is

---

[16] *See, e.g., Xavier v. Belfor USA Group., Inc.*, 2009 WL 411559, at *5 (E.D. La. 2009) (plaintiffs stated a claim under FLSA where they alleged that they routinely worked more than 40 hours per week, that they were not paid overtime compensation and that they were covered employees); *Puleo v. SMG Property Management, Inc.*, 2008 WL 3889727, at *2 (M.D. Fla. 2008) (pursuant to Twombly, plaintiff set forth plausible claim for overtime compensation under FLSA where he alleged that he was a covered employee and that employer unlawfully withheld overtime compensation); *Uribe v. Mainland Nursery, Inc.*, 2007 WL 4356609, at *2–3 (E.D. Cal. 2007) (plaintiffs' FLSA claim satisfied *Twombly* where plaintiffs alleged that defendant failed to compensate them at the appropriate rate for hours worked in excess of 40 hours per week and alleged that plaintiffs were non-exempt employees).

[17] *See Spears v. Mid-Am. Waffles, Inc.*, 2011 WL 6304126, at *2 (D. Kan. 2011) (requiring the plaintiff to plead "a failure to pay overtime compensation and/or minimum wages to covered employees").  To be sure, it is not immediately clear that this court's mention of "covered" employees is the same as requiring a plaintiff to plead the absence of an exemption under the FLSA.

employed."[18]  A workweek, as defined by the regulations, is a "fixed and regularly recurring period of 168 hours—seven consecutive 24-hour periods."[19]

The Court does not find Defendants' semantic distinction between week and workweek to be persuasive in this context.  Certainly, workweek is a term of art under the regulations, and does not necessarily coincide with the calendar week.  But based on Plaintiff's allegation that "[t]hroughout her employment with Midway, [she] regularly worked more than 40 hours per week," the Court can reasonably infer that the allegation refers to Plaintiff's workweek—that is, that she worked more than 40 hours per workweek.[20]  Plaintiff's allegations satisfy the requirements under Rule 8(a).[21]  Dismissal under Rule 12(b)(6) is not appropriate on this basis.

3.    *Defendants' Knowledge of Overtime*

Defendant also contend that Plaintiff has failed to allege Alwidyan had knowledge that Plaintiff worked overtime. "[A] plaintiff proceeding under § 207(a)(1) must also show that the employer had actual or constructive knowledge of the overtime."[22]  In other words, the plaintiff must show that the defendant "knew or should have known of [her] overtime work."[23]  Obviously,

---

[18] 29 U.S.C. § 207(a)(2).

[19] 29 C.F.R. § 778.105.

[20] *Link v. Lawrence Memorial Hosp.*, 2022 WL 11089239, at *2 (D. Kan. 2022) ("A claim is facially plausible if the plaintiff pleads facts sufficient for the court to *reasonably infer* that the defendant is liable for the alleged misconduct.") (emphasis added).

[21] *See McDonald v. Kellogg Co.*, 2009 WL 1125830, at *1 (D. Kan. 2009) ("Defendant demands a level of specificity from plaintiffs' complaint that is not required by the Federal Rules of Civil Procedure. To begin, *Twombly* rejects a heightened pleading standard. Indeed, federal courts in the wake of *Twombly* have held that extensive pleading is not required in the context of an FLSA claim and that allegations need only satisfy the requirements of Rule 8.") (citations omitted).

[22] *McGrath v. Cent. Masonry Corp.*, 276 F. App'x 797, 799 (10th Cir. 2008).

[23] *Id.*

at this stage, Plaintiff may satisfy this requirement simply by alleging actual or constructive knowledge in a manner that complies with pleading requirements.

Plaintiff's Complaint alleges that Defendant Alwidyan had knowledge of her overtime by virtue of his position as the head of Midway Logistics.  The Court agrees with Defendants that Plaintiff's allegations that Alwidyan "knew that employees *like* [Plaintiff] had to conduct business on nights and weekends due to the nature of the business"[24] is insufficient to allege Alwidyan's knowledge of her personal overtime.  But her assertion that "Alwidyan knew the hours that Wright worked" which, she further alleges, exceeded 40 hours per week is sufficient to allege actual knowledge of the alleged overtime on the part of Alwidyan.  She also appears to allege constructive knowledge—that Alwidyan, "as principal officer and owner of Midway," knew or should have known Plaintiff worked overtime.  This too is sufficient to plausibly allege knowledge under § 207(a)(1).

Defendants' contention that Plaintiff has not properly alleged actual or constructive knowledge on the part of Alwidyan is unavailing.  Defendants ignore that clear statements in Plaintiff's Complaint alleging Alwidyan's knowledge of her overtime.  Defendants fail to show why these do not meet the facial plausibility requirements under *Iqbal*.  Therefore, Plaintiff's FLSA claims will not be dismissed on this basis.

## C.  Kansas Wayne Owen Act

The Kansas Wayne Owen Act (the "Act") is a recent addition to the Kansas Consumer Protection Act ("KCPA").  The Act is divided up into three parts.  The first incorporates a section of the Kansas Criminal code—specifically, the prohibition on identity theft and identity fraud

---

[24] Emphasis added.

found in K.S.A. § 21-6107.  That section makes clear that the conduct prohibited by § 21-6107 "constitutes an unconscionable act or practice in violation of K.S.A. 50-627, and amendments thereto, and any person who engages in such conduct shall be subject to the remedies and penalties provided by the Kansas consumer protection act."[25]  The section goes on to say that the person committing the identity theft or fraud shall be deemed the "supplier" under the KCPA, and the victim shall be deemed the "consumer."[26]  "[P]roof of a consumer transaction shall not be required."[27]

The next section of the Act authorizes the Attorney General of Kansas to assist victims of identity theft or fraud and related crimes with various difficulties such victims may encounter.[28] The final section of the Act imposes certain requirements on "holder[s] of personal information," including the implementation and maintenance of reasonable procedures designed to protect the personal information from unauthorized access or use.[29]  It provides that "[e]ach violation of this section shall be an unconscionable act or practice in violation of K.S.A. 50-627, and amendments thereto."[30]  And it makes clear that "[n]otwithstanding any other provision of law to the contrary, the exclusive authority to bring an action for any violation of this section shall be with the attorney general.  Nothing in this section shall be construed to create or permit a private cause of action for any violation of this section."[31]

---

[25] K.S.A. § 50-6,139(a).

[26] *Id.* § 50-6,139(b)(1).

[27] *Id.* § 50-6,139(b)(2).

[28] *Id.* § 50-6,139a(a).

[29] *See id.* § 50-6,139b(b)(1)-(2).

[30] *Id.* § 50-6,139b(d).

[31] *Id.* § 50-6,139b(e).

In seeking dismissal of Plaintiff's claims under the Wayne Owen Act, Defendants argue that the authority to enforce the entire Act is the exclusive province of the Attorney General of Kansas.  They cite K.S.A. § 50-6,139b(e), which states that "the exclusive authority to bring an action for any violation of this *section* shall be with the attorney general."  But by its plain language, this limitation on a private right of action is applies only to this section—the third of three in the Act.  The first section of the Act, by contrast, contains no such limitation.  And without such a clear limitation, it only makes sense that it may be enforced by private action, similar to any other action by an aggrieved consumer under the KCPA.  Therefore, Plaintiff may bring a private cause of action for alleged violations of K.S.A. § 50-6,139.

K.S.A. § 50-6,139 incorporates a section of the Kansas criminal code—K.S.A. § 21-6107.  Conduct prohibited by § 21-6107, namely identity theft and identity fraud, constitutes an unconscionable act or practice under the KCPA.[32]   Therefore, in ruling on Defendants' Motion as to this claim, the Court must consider whether Plaintiff alleges sufficient factual matter to reasonably infer that Defendant engaged in identity theft or fraud, as defined by K.S.A. § 21-6107.

K.S.A. § 21-6107(a) defines identity theft as

> obtaining, possessing, transferring, using, selling or purchasing any personal identifying information, or document containing the same, belonging to or issued to another person, with the intent to: (1) Defraud that person, or anyone else, in order to receive any benefit; or (2) misrepresent that person in order to subject that person to economic or bodily harm.

In turn, personal identifying information is defined as including a person's name, among a number of other things.  "Intent to defraud," while not defined in K.S.A. § 21-6107, is defined as "an intention to deceive another person, and to induce such other person, in reliance upon such

---

[32] *Id.* § 50-6,139(a).

deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property" by K.S.A. § 21-5111(o).  That statute provides general definitions for words or phrases used in the Kansas criminal code, "except when a particular context clearly requires a different meaning."[33]

Plaintiff alleges that, after she left Midway, Defendants used her name in emails to customers.  She alleges Defendants did so "to trick customers into continuing doing business with Midway" after her exit from the company.  Plaintiff further alleges this was done for the financial benefit of Midway.

According to Defendants, these allegations do not bring Plaintiff's claim within the statutory bounds of identity theft because "a company continuing to service its own customers could [not] cause economic or bodily harm to a former employee."  This argument neglects to consider that allegations of economic or bodily harm are only required when a plaintiff seeks to show that the defendant had the intent to "misrepresent that person."[34]  Here, however, Plaintiff alleges that Defendants used her name with an intent to defraud customers in order to receive a benefit.

Though Defendants' argument is misplaced, it highlights the true failure of Plaintiff's claim for identity theft under the Act.  K.S.A. § 21-5111 defines "intent to defraud" as "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." While Plaintiff has alleged that Defendants intended to deceive their customers by using Plaintiff's

---

[33] K.S.A. § 21-5111.

[34] *Compare* K.S.A. § 21-6107(a)(1) *with* K.S.A. § 21-6107(a)(2).

name, it is the second part of this definition that gives the Court pause.  The definition requires that the party deceived have been induced to, essentially, change its position with reference to property.  Here, however, as Defendants point out, these purportedly deceived customers were already doing business with Midway.  Plaintiff has not alleged that they were somehow induced to change their position because of the deception, whether it be to "assume, create, transfer, alter or terminate a right, obligation or power" related to property.  Thus, Plaintiff's claim is without proper legal basis under the Wayne Owen Act, and must be dismissed.

**D.      Tortious Misappropriation of Identity**

Kansas law recognizes a cause of action for invasion of privacy, including the "appropriation of the other's name or likeness."[35]   This cause of action requires proof of appropriation of a person's name or likeness, without that person's consent, and for the benefit of another person.[36]   Further, the Kansas Supreme Court has said that "[i]n order to constitute an invasion of the right of privacy, an act must be of such a nature as a reasonable man can see might and probably would cause mental distress and injury to any one possessed of ordinary feelings and intelligence."[37]

Plaintiff alleges that, after she was no longer employed by Midway, Defendants "misused [her] name by impersonating her and sending emails with her name in the email address" to customers.  She further alleges that Defendants used her "images in internet marketing materials

---

[35] *Dotson v. McLaughlin*, 216 Kan. 201, 531 P.2d 1, 6 (1975) (quoting the Restatement (Second) of Torts § 652).

[36] *Froelich v. Adair*, 213 Kan. 357, 516 P.2d 993, 997 (1973).

[37] *Johnson v. Boeing Airplane Co.*, 175 Kan. 275, 262 P.2d 808, 813 (1953).

without her permission," and that she has suffered "stress, humiliation, and mental anguish" as a result.

This is insufficient to make out a cause of action for invasion of privacy by appropriation of name or likeness.  Kansas law is clear that not every use of another's name or likeness is actionable.  Rather, the use must be such that would cause mental distress to one "possessed of ordinary feelings and intelligence."

The use of Plaintiff's name as part of her company email address clearly does not satisfy this test.  As a matter of law, no person of ordinary feelings and intelligence would experience emotional distress as a result of the use of an old company email address containing their name.  And Plaintiff's allegations that Defendants used her image in marketing materials are totally bereft of facts from which the Court could reasonably infer that the use of Plaintiff's image would cause mental anguish to a person of ordinary feelings.  Her bare allegation that she suffered "stress, humiliation, and mental anguish" is conclusory and legally insufficient, as the test is not a subjective one.  Further, Plaintiff alleges no facts from which the Court could reasonably infer that the marketing materials would cause mental distress to a person of ordinary feelings.  Accordingly, Plaintiff's claim for the alleged misappropriation of her name and likeness is dismissed.

**E.      Kansas Wage Payment Act**

Defendants have two problems with Plaintiff's KWPA claims.  First, they contend that Plaintiff cannot recover certain alleged "reductions" made to the payments she received from each sale.  Second, they take issue with Plaintiff's request for attorney's fees, as well as compensatory and punitive damages.  The Court examines each in turn.

1.      *Reductions as Wages*

Plaintiff alleges she was generally paid 35% of the profit from each of her sales, less certain reductions.  Among these reductions was a "factoring fee" of 4% of the value of the transaction, justified by Defendants as necessary to reimburse factoring companies.  In addition, chargebacks, truckstop software fees, and assistant fees were levied by Defendants to reduce Plaintiff's overall compensation for a particular sale.  Plaintiff alleges that Defendants never had to reimburse any factoring companies and that the other fees were "unjustified."

Defendants contend such reductions are not "wages" under the KWPA and are therefore not recoverable by Plaintiff in this action.  In support, they cite this Court's decision in *Larson v. FGX International, Inc.*,[38] which stated that "reimbursements for expenses—such as automobile maintenance, fuel, or other equipment necessary to perform a job—are only recoverable wages under the KWPA if they are due under an employment agreement and intended as extra financial gain to the employee, rather than mere reimbursement."[39]  But Defendants' argument relies on its own version of the facts—that such reductions actually were used to reimburse factoring companies or were otherwise justified.  At this stage, the Court must accept as true Plaintiff's allegations that such reductions were often wrongfully made without a business reason and were thus not true business expenses.  Therefore, Plaintiff's claim will not be dismissed on this ground.

2.      *Attorney's Fees, Compensatory and Punitive Damages.*

Defendants ask the Court to rule that Plaintiff cannot recover attorney's fees under the KWPA or Kansas common law and cannot recover compensatory or punitive damages under the

---

[38] 2015 WL 2449577 (D. Kan. 2015).

[39] *Id.* at *2.

FLSA and KWPA. Plaintiff does not dispute either of Defendants' contentions, and further represents that she does not seek compensatory and punitive damages for her FLSA and KWPA claims. Accordingly, it seems settled that Plaintiff may not recover attorney's fees under the KWPA or Kansas common law. Nor may she recover compensatory or punitive damages under the FLSA or KWPA.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 15) is **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED.**

Dated this 9th day of November, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE